UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENNIS SARANTAPOULAS, et al.,

    Plaintiffs,

    v.

BANK OF AMERICA, N.A., et al.,

    Defendants.

_____/

No. C 12-0564 PJH

**ORDER RE MOTION TO DISMISS**

    Defendant's motion to dismiss plaintiffs' first amended complaint was filed with this court on June 6, 2012. Having read the parties' papers and carefully considered the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendant's motion to dismiss as follows.

## BACKGROUND

    Plaintiffs Dennis Sarantapoulas and Daniel Wood ("plaintiffs") bring this lawsuit against defendant Bank of America, N.A. ("defendant") over a dispute arising out of a mortgage agreement. Plaintiffs' complaint is not a model of clarity, but it appears the facts are as follows: In February 2005, plaintiffs agreed to purchase a property at 109 Cypress Avenue, Dillon Beach, CA. In March 2005, plaintiffs applied for a mortgage with Pro 30 Funding ("Pro 30") (who has since assigned the mortgage to defendant Bank of America) in the amount of $297,500. On April 1, 2005, Pro 30 provided plaintiffs with Truth in Lending Act ("TILA") disclosure documents, which showed a loan amount of $297,500 and an annual interest rate of 6.308%. On May 5, 2005, plaintiffs signed mortgage documents (a deed of trust and an interest-only adjustable rate note) that showed a loan amount of $400,000 and an interest rate of 6.5%. Six weeks later, on June 13, 2005, Pro 30 sent to

plaintiffs new disclosure statements (but not a new deed of trust), showing a loan amount of $400,000 but an interest rate of 6.99%. Plaintiffs claim that they did not discover these discrepancies when reviewing the documents.

Over the next few years, plaintiffs were unable to keep pace with their increasing mortgage payments. In mid-2008, Bank of America acquired plaintiffs' mortgage, and in October 2008, plaintiffs began negotiations to obtain a loan modification. Plaintiffs stopped making payments on the mortgage in or around January 2009. Between then and December 2011, plaintiffs and Bank of America attempted to work out a loan modification plan. During this time, Bank of America sent a "Home Affordable Modification Trial Period Plan" to plaintiffs, which set forth certain conditions for plaintiffs to meet in order to qualify for a loan modification. However, on May 21, 2010, Bank of America notified plaintiffs that their mortgage was not eligible for a loan modification.

In fall 2011, it appears that Bank of America started foreclosure proceedings for plaintiffs' property. On September 28, 2011, Bank of America submitted a declaration stating that, under California Civil Code § 2923.5, it had "tried with due diligence" to contact the borrowers. On October 6, 2011, Bank of America filed a notice of default and election to sell under deed of trust. After that, on October 27, 2011, plaintiffs met with a lawyer for the first time. It was during this meeting that plaintiffs claim they were first made aware of possible wrongdoing by defendant. On February 3, 2012, plaintiffs filed the original complaint in this action, asserting four causes of action against Bank of America[1] (both directly and as the assignee of Pro 30, the original mortgage provider) for (1) fraud, (2) violations of TILA, (3) violations of the Real Estate Settlement Procedures Act ("RESPA"), and (4) violations of California Civil Code section 2923.5.[2] At the same time, plaintiffs also

---

[1] The original complaint also named the ReconTrust Company as a defendant, but the amended complaint does not.

[2] The original complaint also contained a brief reference to California's Unfair Competition Law, but plaintiffs informed the court that this was a drafting error. (See Dkt. 1 at ¶ 51; Dkt. 20 at 5.)

2

1  filed an application for a temporary restraining order, which the court denied both because
2  of defective service and because plaintiffs had failed to show a sufficient likelihood of
3  success on the merits. See Dkt. 6.
4  　　　　On March 6, 2012, defendants moved to dismiss plaintiffs' original complaint. The
5  court dismissed the fraud claims as time-barred and as failing to meet Rule 9(b)'s
6  particularity standard. Plaintiffs were granted leave to amend to meet Rule 9(b)'s higher
7  pleading standard, and to set forth facts that would establish that equitable tolling should
8  apply. The court also dismissed plaintiffs' TILA claims as time barred, but again granted
9  leave to amend to allege equitable tolling. The court dismissed plaintiffs' RESPA claim as
10 failing to state a claim and as time-barred, and granted leave to amend. Finally, as to
11 plaintiffs' claims under California Civil Code 2923.5, the court dismissed the claims as
12 failing to adequately allege how defendants had violated the statute, and granted leave to
13 amend. Plaintiffs filed their first amended complaint ("FAC"), which is the subject of this
14 motion, on May 16, 2012. Defendant Bank of America moved to dismiss on June 6, 2012.

## LEGAL STANDARD

16 　　　　A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims
17 alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).
18 Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen.
19 Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for
20 failure to state a claim, a complaint generally must satisfy only the minimal notice pleading
21 requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the
22 complaint include a "short and plain statement of the claim showing that the pleader is
23 entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement
24 need only give the defendant "fair notice of the claim and the grounds upon which it rests."
25 Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
26 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a
27 plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than
28 labels and conclusions, and a formulaic recitation of the elements of a cause of action will

3

not do." Twombly, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face.  See id. at 558-59.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**DISCUSSION**

First cause of action - Fraud

Plaintiffs divide their first cause of action into two parts: (1) fraud on the loan origination documents, and (2) fraud on the loan modification.  This order will discuss each part separately.

Plaintiffs first allege that Pro 30 (the predecessor-in-interest to defendant Bank of America) made false statements and omissions of material facts in connection with the origination of plaintiffs' loan in May 2005.  Essentially, plaintiffs allege that Pro 30 engaged in a bait-and-switch, promising "lower interest rates, lower monthly payment amounts and lower finance charges," but then presenting plaintiffs with loan documents that contained less favorable terms.  Plaintiffs further allege that they were sent additional disclosure documents, six weeks after the loan documents were finalized, with even less favorable terms.  Plaintiffs allege that these disclosure documents were back-dated in an attempt to conceal any wrongdoing.

The loan agreement was signed by plaintiffs on May 5, 2005, and the allegedly revised disclosure statements were sent to plaintiffs on June 13, 2005.  Plaintiffs acknowledge that any related claim for fraud is subject to a three year statute of limitations, and indeed, this court previously dismissed this cause of action as time-barred.  See Dkt. 20.  The court granted leave to amend so that plaintiffs could allege facts supporting an equitable tolling defense, and plaintiffs do allege such a defense in the FAC.  Plaintiffs

4

claim to have been unaware of any fraud until late 2011, when they consulted with a lawyer and began "reviewing all loan documents for signs of irregularities." See FAC, Dkt. 22 at 10. Plaintiffs also point out that defendant "is unable to provide any evidence of earlier discovery" by plaintiffs. Dkt. 29 at 5. However, the applicability of equitable tolling does not depend on the date that plaintiffs actually discovered the alleged fraud. Instead, plaintiffs must be "held to [their] actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to [them]." Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1109 (1998). Put another way, equitable tolling only applies when "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000) (emphasis added).

Plaintiffs have not shown that they were unable to discover the alleged fraud at the time that they entered into the loan agreement. Plaintiffs had unfettered access to all relevant loan documents when they were signed in 2005, and any alleged fraud would have been "self-apparent at the consummation of the transaction." See Cervantes v. Countrywide Home Loans, Inc., 2009 WL 3157160 at *4 (D. Ariz. Sept. 24, 2009) (declining to apply equitable tolling); see also Wong v. American Servicing Co., 2009 WL 5113516 at *4 (E.D. Cal. Dec. 18, 2009) (same). Since that time, plaintiffs have had continuous access to the documents that embody the alleged violations, but claim that their status as "uneducated consumers" prevented them from discovering any alleged wrongdoing. This argument is unavailing, because as stated above, plaintiffs are held to knowledge that could have reasonably been discovered through sources available to them. Plaintiffs admit that they did not review their loan documents for irregularities until after defendant initiated foreclosure proceedings. FAC at 10. In plaintiffs' own words, before that, "the economy was good, Plaintiff Daniel Wood's lawn care business was expanding and home values were increasing rapidly." FAC at 7. Although plaintiffs may not have been motivated to look for potential fraud during times of prosperity, their inaction does not give rise to an equitable tolling claim, and plaintiffs' first cause of action for fraud on the loan origination documents is DISMISSED with prejudice as time-barred.

However, as part of the first cause of action, plaintiffs also allege fraud on the loan modification. The court previously dismissed this claim for failure to plead with particularity, as required by Rule 9(b), but granted leave to amend. See Dkt. 20 at 2-3. In the FAC, plaintiffs make allegations related to their loan modification negotiations with defendant, but "request permission from the court to change this cause of action from Fraud to Breach of Contract." FAC at 11. Presumably, plaintiffs did not want to violate this court's dismissal order, which stated that plaintiffs "may amend the four causes of action as directed above, but may not add new causes of action or parties without leave of court or a stipulation of all parties." Dkt. 20 at 5.

Plaintiffs' allegations center around a written "Home Affordable Modification Trial Period Plan Agreement" (the "Plan") sent from defendant to plaintiffs, dated November 1, 2009. The Plan stated that if plaintiffs "are in compliance with this Trial Period Plan . . . the servicer will provide [them] with a Home Affordable Modification Agreement." See FAC, Ex. A-14. Plaintiffs allege that they were in compliance with the Plan and "made 3 payments of $2,118.78 to defendants in consideration of the contract," but that defendants ultimately refused to provide a final loan modification agreement because of a "delay in processing," and because of an alleged failure to maintain a positive net present value ("NPV"). FAC at 11-12. Plaintiffs allege that a positive NPV was not a condition of the Plan.

Defendant, on the other hand, argues that the Plan was not an enforceable contract, and was instead only a non-binding trial plan for loan modification. Defendant points to language stating that if Bank of America "does not provide [] a fully executed plan and modification agreement . . . the loan documents will not be modified and this plan will terminate." See FAC, Ex. A-14.

Plaintiffs' argument does have merit. The Plan contains language that suggests it is more than just an agreement to future negotiations, and appears to promise a loan modification if plaintiffs' representations "continue to be true in all material respects." Specifically, the plan provides as follows:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

FAC, Ex. A-14, at 1.

The "representations in section 1" consist of representations that plaintiffs were unable to afford the mortgage, that they lived in the property as their principal residence, that there has been no change in ownership since the loan documents were signed, that plaintiffs will provide documentation for all income received, that all documents are correct, and that plaintiffs will obtain credit counseling if required by the bank. See id. The plan also provides for the three payments mentioned by plaintiffs, and refers to them as "trial period payments." Id. at 2. The plan then states that:

> If I comply with the requirements in Section 2 [referring to the trial period payments] and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.

Id. at 3.

The terms of the Plan do appear to be sufficiently definite to bind Bank of America to its terms, provided that plaintiffs complied with their obligations. And while it may be true that the payments were originally owed as part of the 2005 mortgage agreement, plaintiffs had stopped making payments by the time of this negotiation, and more importantly, the language of the plan itself conditions any future loan modification on the receipt of those payments. This seems to suggest that the payments were made as consideration supporting a contract. Even putting that aside, plaintiffs' compliance with the representations of section 1 of the plan (providing income statements, staying in the property as their principal residence, etc.) would also seem to constitute consideration in support of a contract. Thus, plaintiffs' allegations related to the loan modification do set forth a valid claim for relief. Defendant's motion to dismiss is therefore DENIED, and plaintiffs are granted leave to amend their complaint to allege a claim for breach of contract

related to the loan modification.

Second cause of action - TILA

Plaintiffs' second cause of action, for alleged TILA violations, arises solely out of the original 2005 loan agreement. Plaintiffs concede that the relevant statute of limitations is, at most, three years, but again argue that equitable tolling applies. For the reasons described above, the court does not find that equitable tolling applies to any alleged wrongdoing that could have been discovered at the time that the loan agreement was executed, and plaintiffs' second cause of action is DISMISSED with prejudice as time-barred.

Third cause of action - RESPA

Plaintiffs admit that they do not have facts sufficient to assert a RESPA cause of action, but request "leave to amend based on facts that may be discovered during future disclosures and discovery." FAC at 16. The court has already granted leave to amend once, and plaintiffs cannot be permitted to assert placeholder claims in the absence of supporting facts, so plaintiffs' third cause of action is DISMISSED. However, the dismissal is without prejudice; if discovery does yield facts that would support a RESPA claim, the plaintiffs may file a motion to amend in order to re-assert a RESPA claim.

Fourth cause of action - Cal. Civ. Code § 2923.5

Plaintiffs' fourth cause of action is based on the allegation that defendant filed a faulty declaration along with its Notice of Default. Specifically, plaintiffs claim that defendant's notice falsely states that it had "tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5." See Dkt. 24, Ex. 2. The key phrase here is "due diligence," for which section 2923.5 requires a first-class letter to be sent to the borrowers, then three different attempts to contact by telephone, then a two week period for the borrowers to respond, then a certified letter to be sent to borrowers. See Cal. Civ. Code § 2923.5(g). Defendant does not contend that it met these requirements, but instead explains that it had over 70 phone conversations with borrowers in an attempt to reach agreement as to the loan modification. Simply put, it appears that

defendant checked the wrong box on the declaration. The entire "due diligence" requirement is only applicable if the lender cannot make contact with the borrower under subsection (a)(2), which requires that the "mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." The declaration contains a box (unchecked in this case) stating that the bank "has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." It appears that defendant clearly met this requirement, but checked the wrong box on the declaration. Thus, while this notice of default was indeed defective, and should be re-filed with the correct box fixed, it does not appear that plaintiffs can allege a substantive violation of section 2923.5. Thus, plaintiffs' fourth cause of action is DISMISSED with prejudice.

Plaintiffs shall have until October 26, 2012 to file an amended complaint in accordance with this order. Plaintiffs may amend the first cause of action as directed above, but may not add new causes of action or parties without leave of court or a stipulation of all parties. Defendant's response is due no later than November 16, 2012. If the response is another motion to dismiss, it should be noticed in accordance with the local rules, but the court will likely not hold any further hearings on the pleadings.

Finally, the court has also considered defendant's request for judicial notice, filed on June 6, 2012. Exhibit 1 is the deed of trust to plaintiffs' property, and Exhibit 2 is the notice of default and supporting declaration issued by defendant. Both of these documents relate to causes of action that have been dismissed, and defendant's request is therefore DENIED as to Exhibits 1 and 2. Exhibits 3 and 4 are documents from this court's own docket, for which judicial notice is unnecessary. Thus, defendant's request is DENIED as to Exhibits 3 and 4.

**IT IS SO ORDERED.**

Dated: October 5, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge